# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RICHARD J. REYNA, SR.,

    Petitioner,

    v.              Case No. 10-C-598

MICHAEL BAENEN[1],

    Respondent.

# DECISION AND ORDER

## I. PROCEDURAL HISTORY

On July 16, 2010, Richard J. Reyna, Sr. (petitioner), a person incarcerated pursuant to a state court judgment and who is proceeding pro se, filed a petition for a writ of habeas pursuant to 28 U.S.C. § 2254. (Docket No. 1). The Honorable William C. Griesbach screened the petition in accordance with Rule 4 of the Rules Governing Section 2254 Cases and ordered the respondent to answer the petition. (Docket Nos. 9, 10). The matter was subsequently reassigned to this court upon all parties consenting to the full jurisdiction of a magistrate judge. (Docket Nos. 7, 13, 14).

The respondent answered the petition on September 14, 2010, (Docket No. 15), and the petitioner submitted two responses to this answer, (Docket Nos. 34, 46). The respondent submitted a brief in opposition to the petition, (Docket No. 47), and the petitioner has responded, (Docket No. 51). During the pendency of this matter the petitioner has also

---

[1] The petitioner is currently incarcerated at Green Bay Correctional Institution. The warden of this institution is Michael Baenen. In accordance with Rule 2(a) of the Rules Governing Section 2254 Cases and Federal Rule of Civil Procedure 25(d) the caption is hereby amended to name Michael Baenen as the respondent.

submitted various letters and discovery-related requests, which the court denied as improper. The pleadings on the petition for a writ of habeas corpus are closed and the matter is ready for resolution.

## II. FACTS

The following facts are set forth in the criminal complaint that served as the factual basis for the petitioner's plea of no contest. (Docket No. 51-1 at 29-32; Answer, Exh. I).

On October 12, 2006, the petitioner was a passenger in the back seat of a van driven by a friend, when a red Cadillac passed them as they were waiting to leave the parking lot of the Wal-Mart in Berlin, Wisconsin. The petitioner ordered his friend to follow the Cadillac and once behind the vehicle, the petitioner's friend recognized the vehicle by its personalized license plate as belonging to Green Lake County Circuit Court Judge W.M. McMonigal. The petitioner ordered his friend to pull alongside the Cadillac and when he did so, he noticed that the petitioner was standing at the side door of the van. The petitioner asked if the judge would be able to see him through the van's window, and his friend responded that the judge could not. The petitioner's friend completed passing the Cadillac and then abruptly turned off the road they had been traveling. Upon doing so, the friend observed the petitioner continuing to stand at the door of the van with a pistol in his hand. The petitioner stated, "I could have done it, the only reason why I didn't was because he had his wife with him." The petitioner repeatedly said, "He is a dead man," in reference to Judge McMonigal and demonstrated for his friend how he could have shot Judge McMonigal from the door of the van.

The petitioner's friend knew the petitioner was upset with Judge McMonigal because of Judge McMonigal's decisions in prior cases involving the petitioner, including a divorce proceeding. Believing that the petitioner intended to kill Judge McMonigal, the petitioner's

2

friend contacted law enforcement and the petitioner was subsequently arrested. The petitioner's friend later located the pistol the petitioner had in his hand as they passed Judge McMonigal. A detective observed that the pistol was fully loaded and that the base of the round in the chamber had a depression indicating that it had been struck by the firing pin, but had failed to fire. While in custody, when the petitioner was being transported to meet with an attorney, the petitioner commented to a correctional officer that he had to kill Judge McMonigal so that his family would be left alone.

The petitioner was initially charged with battery or threat to a judge, attempted first degree intentional homicide, and conspiracy to commit first degree intentional homicide. (Answer, Exh. I). Due to Green Lake County Circuit Court's only judge being the victim of this crime, a judge from Winnebago County Circuit Court was assigned to preside over this matter and a Milwaukee County Assistant District Attorney was appointed as a special prosecutor.

Pursuant to a plea agreement, the petitioner pled no contest to first degree recklessly endangering safety with the use of a dangerous weapon and battery or threat to a judge. (Answer, Exh. A). He was sentenced to a total term of seven years of initial confinement to be followed by five years of extended supervision. (Answer, Exh. A).

The petitioner appealed, and his attorney submitted a no merit report to the court of appeals, (Answer, Exh. B), which the petitioner initially moved to strike, (Answer, Exh. C). However, after this request was denied, (Docket No. 47-1), the petitioner submitted a response. (Answer, Exh. E). The court of appeals summarily affirmed the petitioner's conviction on February 25, 2009, (Answer, Exh. F), and the Wisconsin Supreme Court denied the petitioner's petition for review on July 15, 2009. (Answer, Exh. H).

**III. STANDARDS OF REVIEW**

> Under the Antiterrorism and Effective Death Penalty Act (AEDPA), [a federal court] may grant a petition for habeas relief from a state court judgment only in one of two limited circumstances: if the state court decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Smith v. Grams, 565 F.3d 1037, 1043 (7th Cir. 2009).

Thus, this court's authority to upset a state court conviction is very limited. The court shall presume that the state court's factual determinations are correct and the petitioner may rebut this presumption only by clear and convincing evidence. Id. (citing § 2254[e][1]). The petitioner "bears the burden of showing that the state court's finding of fact or its application of federal law was not only erroneous, but unreasonable." Id. (citing Waddington v. Sarausad, 129 S. Ct. 823, 831 [2009]); Sturgeon v. Chandler, 552 F.3d 604, 609 (7th Cir. 2009)). Under the "unreasonable application" prong of § 2254(d)(1), it is not enough for the federal court to simply disagree with the conclusion of the state court; the state court's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

**IV. ANALYSIS**

The petitioner presents the following seven claims in his petition: (1) the court of appeals erred by failing to strike the no merit report filed by appellate counsel; (2) the circuit court failed to sufficiently ascertain the petitioner's understanding of the elements of the first degree recklessly endangering safety while possessing a dangerous weapon charge; (3) there was an insufficient factual basis for his no contest plea to the recklessly endangering safety charge; (4) his trial counsel was ineffective for failing to properly advise him regarding his no

4

contest plea; (5) the circuit court judges should have recused themselves from the petitioner's case; (6) the circuit court should have disqualified the Green Lake County district attorney from bringing charges; and (7) the case should have been moved out of Green Lake County.

The respondent contends that all of the petitioner's claims fail for various reasons. In the view of the respondent, many of the petitioner's claims are foreclosed by the fact of his no contest plea while the court of appeals' decisions regarding other claims were not contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court.

### A. KNOWING AND VOLUNTARY PLEA

When a defendant accepts responsibility for a crime by way of a plea of guilty or no contest (the distinction between a plea of guilty and no contest is inconsequential for present purposes), there is "a break in the chain of events which has preceded it in the criminal process." Tollett v. Henderson, 411 U.S. 258, 267 (1973). By formally accepting responsibility for the crime charged, a defendant gives up not only the privilege against self-incrimination, the right to a jury trial, and the right to confront one's accusers, Godinez v. Moran, 509 U.S. 389, 397 n.7 (1993), but he also gives up the right to raise most independent claims relating to the deprivation of constitutional rights that occurred prior to the plea. Tollett, 411 U.S. at 267. Therefore, to revive claims foreclosed by virtue of his plea of no contest, the defendant must first demonstrate that his plea was not voluntarily and intelligently made. Id. Accordingly, the court begins its analysis with the petitioner's claim that his guilty plea to the recklessly endangering safety while armed charge was not voluntary and intelligent.

"[T]he voluntariness of a plea 'can be determined only by considering all of the relevant circumstances surrounding it.'" Wozny v. Grams, 539 F.3d 605, 608 (7th Cir. 2008) (quoting

5

Brady v. United States, 397 U.S. 742, 749 [1970]). "[T]he question of whether a plea of guilty is entered knowingly, intelligently and voluntary is a mixed question of law and fact 'that requires the application of legal principles to historical facts.'" Id. at 609 (quoting Nash v. Israel, 707 F.2d 298, 301 [7th Cir. 1983]). Whether a factual, legal, or mixed question, the court is nonetheless required to apply the standard of review set forth above and set aside the decision of the state court only if it was unreasonable. Id.

When a defendant is fully examined as to the voluntariness of his plea at the time he makes it and indicates on the record that it is voluntary, he may later contradict those statements only if there is a compelling reason for the disparity. See id. at 609-10. "[A] plea's validity may not be collaterally attacked merely because the defendant made what turned out, in retrospect, to be a poor deal." Bradshaw v. Stumpf, 545 U.S. 175, 186 (2005).

The petitioner presents three grounds that the court construes as arguments that his plea of no contest to the crime of first degree recklessly endangering safety while armed was not made voluntarily and intelligently: (a) the circuit court failed to sufficiently ascertain the petitioner's understanding of the elements of the first degree recklessly endangering safety while possessing a dangerous weapon charge; (b) there was an insufficient factual basis for his no contest plea to the recklessly endangering safety charge; and (c) his trial counsel was ineffective for failing to properly advise him regarding his no contest plea. The petitioner does not challenge his plea to the battery or threat to a judge offense.

A review of the transcript of the petitioner's change of plea hearing, (Answer, Exh. N), and his Plea Questionnaire / Waiver of Rights form (Docket No. 51-1 at 18-19), reveals that all of these arguments are without merit.

The following exchange is contained in the transcript of the plea hearing:

> THE COURT: Do your understand that for Count 1, the recklessly endangering – first-degree recklessly endangering while armed, the State would have to prove that you did recklessly endanger the safety of Judge McMonigal under circumstances which showed utter disregard for a human life and you did so while possessing a dangerous weapon? Do you understand that?
>
> THE DEFENDANT: Yeah.

(Answer, Exh. N at 5).

A voluntary and intelligent plea requires that the defendant be aware of the nature of the charges against him, including the elements of the offense. Bradshaw, 545 U.S. at 183. The record clearly demonstrates that the petitioner was informed of the elements of the crime to which he was pleading no contest, and the petitioner stated he understood those elements. Nothing further is constitutionally required. See id. The petitioner cannot now contradict his statements made on the record in open court without a showing that there is a compelling reason for doing so.

The petitioner contends that he was insufficiently informed of the elements of the crime of first degree recklessly endangering safety while armed because he was not told that his conduct had to "create a risk of death or great bodily harm to another person." (Docket No. 1 at 10). There was good reason why the petitioner was not told that this was an element of the crime to which he was pleading no contest – it is not an element.

The elements of a crime are contained in the statute, in this case, Wis. Stat. § 941.30(1) (2005-06), and that statute sets forth the elements recited by the court at the petitioner's plea hearing. The phrase that the petitioner contends is an element of the crime comes from Wisconsin's Pattern Criminal Jury Instruction 1345. Jury instructions explain a crime in much greater detail than the bare statutory elements. The phrase "create a risk of death or great bodily harm to another person" simply defines what "recklessly" means. A

7

court or defense attorney might choose to utilize the pattern jury instructions to further explain a crime, especially if a defendant indicates that he does not understand the elements of the crime, but such additional steps were unnecessary here because the petitioner indicated he understood the elements of the offense to which he was pleading no contest. There is no constitutional requirement that a defendant be informed of the jury instructions prior to accepting responsibility for a crime.

As for the factual basis for the petitioner's plea of no contest, the requirement that a factual basis for the plea be set forth on the record is a product of state statute, specifically Wis. Stat. § 917.08(1)(b), not a federal constitutional mandate. <u>Sherrod v. Chandler</u>, 2011 U.S. Dist. LEXIS 44269, *13 (N.D. Ill. Apr. 19, 2011). Thus, a lack of a factual basis in the record would not entitle the petitioner to federal habeas relief because it would not violate any constitutional requirement. <u>Higgason v. Clark</u>, 984 F.2d 203, 207 (7th Cir. 1993); <u>Gruenberg v. Pollard</u>, 2008 U.S. Dist. LEXIS 94572, *2 (W.D. Wis. Nov. 18, 2008). To the extent that the argument might be made that the absence of a factual basis may have rendered the petitioner's plea unknowing, the claim fails upon its merits.

The court asked the petitioner, "Do you agree that the facts, as set out in the Complaint, would make it a – or give me a factual basis to find you guilty?" (Answer, Exh. N at 5). The petitioner responded, "Yeah." (Answer, Exh. N at 5). A review of the criminal complaint, the essential facts set forth above, and the reasonable inferences drawn from those facts, reveal a sufficient factual basis to support the petitioner's plea of no contest to the crimes charged in the amended information. (Answer, Exh. I).

The petitioner points to certain contradictions in police reports and preliminary hearing testimony in an effort to contend that the criminal complaint was inaccurate. However, factual

disputes are matters for trial. All such arguments were waived when the petitioner gave up his right to a trial by pleading no contest and agreed that the criminal complaint could serve as the factual basis for his plea. In essence, the petitioner was admitting that everything in the criminal complaint was true.

Finally, the petitioner alleges his plea was not knowing and voluntary because his trial counsel failed to properly advise him. "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (internal quotation marks omitted). This claim is not well-developed in the petitioner's filings with this court, but a review of his state court filings, particularly the petition for review the petitioner filed with the Wisconsin Supreme Court, (Answer, Exh. G), provide a better explanation of the petitioner's claim. The petition for review represents a particularly appropriate source to turn to because only arguments raised in the petition for review are appropriate for consideration by this court.

In essence, the petitioner contends that if his trial counsel had conducted adequate research into the facts of this case, counsel never would have allowed the petitioner to plead no contest. Moreover, the petitioner contends that his trial counsel never counseled him as to whether he should take the plea bargain. (Answer, Exh. G at 20).

The decision of whether to accept a plea agreement or to insist upon a trial is reserved to a defendant. A defense attorney cannot prevent a defendant from accepting responsibility for a crime any more than a defense attorney could coerce a defendant to pleading guilty when he insisted upon his innocence. See Williams v. Jones, 571 F.3d 1086, 1091 (10th Cir.

9

2009) (holding that defense counsel denied defendant effective assistance when counsel threatened to withdraw from case if defendant accepted plea agreement).

Nonetheless, a defendant is entitled to the effective assistance of counsel during plea negotiations. "A reasonably competent attorney will attempt to learn all of the facts of the case, make an estimate of the likely sentence, and communicate the result of that analysis before allowing the client to plead guilty." Julian v. Bartley, 495 F.3d 487, 495 (7th Cir. 2007). It is not enough to show that an attorney made a mistake. Rather, the mistake must be so egregious that no reasonable attorney would have made it and the mistake must have been "the decisive factor in a defendant's decision to plead guilty or to proceed to trial." Id. at 495, 498.

The petitioner's argument that he would have been acquitted of first degree recklessly endangering safety had he proceeded to trial on that charge is inapposite. The record before this court suggests that the amendment of the charge in the information from attempted first degree intentional homicide to first degree recklessly endangering safety was conditioned upon the plea agreement. (See e.g., Answer, Exh. B at "App 106" [Plea Questionnaire / Waiver of Rights]). Thus, the alternative to accepting responsibility for the offense of first degree recklessly endangering safety was not proceeding to trial on that charge, but rather proceeding to trial on the much more serious charge of attempted first degree intentional homicide.

Under Wisconsin law, a person is guilty of attempted first degree intentional homicide when a person, "with intent to commit first degree intentional homicide, does acts toward the commission of that crime which demonstrate unequivocally, under all of the circumstances, that he or she had formed that intent and would commit the crime except for the intervention of

another person or some other extraneous factor." Wis. Crim. JI 1070. In the context of a charge of attempted first degree intentional homicide, the dispute of whether the petitioner possessed a firearm at the moment he passed Judge McMonigal's car becomes far less relevant.

There is no argument that the petitioner's trial counsel was unaware of the factual dispute about whether the petitioner possessed a firearm; the same attorney who represented the petitioner at the plea hearing represented the petitioner at the preliminary hearing where factual disputes initially arose. Rather, the petitioner's argument focuses upon what counsel did with this knowledge. In the petitioner's view, his attorney should have counseled him to reject the plea agreement. Having reviewed the record, the court concludes that a reasonable attorney could have advised the petitioner to accept the plea agreement and, therefore, the petitioner was not denied the effective assistance of counsel.

By accepting responsibility for the offense of first degree recklessly endangering safety while armed, the maximum penalty for which is 17-and-a-half years in prison, Wis. Stat. §§ 939.50(3)(f); 939.63(1)(b); 941.30(1), the petitioner avoided the possibility of spending up to 60 years in prison if he had proceeded to trial and been convicted of attempted first degree intentional homicide Wis. Stat. §§ 939.32(1)(a); 939.50(3)(a)-(b); 940.01(1)(a). Even if the petitioner could have persuaded a jury that he did not possess a firearm at the moment he passed Judge McMonigal's vehicle, he still would likely face a difficult task countering the state's argument that, based upon all the circumstances (which would include actions far beyond those limited to what occurred in the van on the highway that day), that the petitioner unequivocally formed the intent to murder Judge McMonigal, and would have done so absent the intervention of another person or some other extraneous factor. Finally, there is the fact

11

that the petitioner stated during his plea hearing that he was satisfied with the representation he received from his attorney. (Answer, Exh. N at 6).

Based upon the foregoing, the court is unable to conclude that the court of appeals' decision concluding that the petitioner's plea was knowingly and voluntarily made was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Accordingly, the court must deny the petitioner relief as to the claim that his no contest plea was not knowingly and voluntarily made.

**B. Other Claims**

The petitioner's claim that the court of appeals erred by failing to strike the no merit report filed by appellate counsel raises only matters of state law and, therefore, is not cognizable in a federal petition for a writ of habeas corpus. See, e.g., Estelle v. McGuire, 502 U.S. 62, 68 (1991). Thus, the court will not consider this claim further.

As to the petitioner's remaining claims, the respondent contends that these claims are foreclosed by virtue of the petitioner's no contest plea. As previously noted, when a defendant pleads guilty or no contest, a defendant gives up the right to raise most independent claims relating to the deprivation of constitutional rights that occurred prior to the plea. Tollett, 411 U.S. at 267. Exceptions to this general rule are limited to constitutional violations that go the very heart of the state's ability to convict the defendant and are inherently incurable. Blackledge v. Perry, 417 U.S. 21, 29-30 (1974) (vindictive prosecution); see also Menna v. New York, 423 U.S. 61, 62-63 (1975) (per curiam) (double jeopardy); United States v. Gaertner, 583 F.2d 308, 311 (7th Cir. 1978) (claim that criminal statute is unconstitutional); but

see, Gomez v. Berge, 434 F.3d 940, 943 (7th Cir. 2006) (holding that unconditional plea of no contest waived double jeopardy claim).

A helpful means of determining whether a claim survives a knowing and voluntary no contest plea is by considering the nature of relief a court may order if a petitioner prevailed upon his claim. If the only remedy would be dismissal of the conviction and a permanent bar upon retrial, the claim is much more likely to remain despite the petitioner's knowing and voluntary acceptance of criminal responsibility. But if the remedy would be simply a re-trial or re-sentencing for the same offense but under different conditions, the claim would necessarily not undermine the state's inherent authority to convict the petitioner and, therefore, the claim almost certainly would be waived upon a knowing and voluntary plea of guilty or no contest.

In the present case, the petitioner argues only that he should have been prosecuted by a different individual, in a different courthouse, and at a proceeding presided over by a different judge. If the petitioner was to prevail on these claims, the state would not be inherently barred from re-convicting the petitioner. Thus, these claims do not strike at the heart of the state's authority to prosecute him. Therefore, the court concludes that all of these claims are foreclosed as a result of the petitioner's knowing and voluntary no contest plea.

Even if the court were to consider these claims upon their merits, the court would reject them. There is no reason to believe that the allegation that Judge McMonigal, the victim in this case, was present in the courthouse during relevant proceedings created any sort of conflict. While Judge McMonigal was clearly prohibited from presiding over a case in which he was victim, he was entitled to not only be present in the courthouse but, if he chose to, to attend all court proceedings. See Wis. Stat. § 950.04(1v)(b). Although the Green Lake County district attorney subsequently recused himself from this case, this did not somehow taint the charges

he initiated. The matter was handled by a special prosecutor from Milwaukee County. Therefore, any conceivable taint was cured upon the appointment of the special prosecutor. Finally, the court has no reason to conclude that there was any error in prosecuting this matter in Green Lake County Circuit Court. The petitioner's claims of prejudice are wholly speculative.

## V. CONCLUSION

The court of appeals' decision that the petitioner's no contest plea was knowing and voluntary was not contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court. The petitioner's knowing and voluntary plea of no contest foreclosed the petitioner's opportunity to challenge all of the petitioner's other constitutional claims. However, even if the court was to consider these constitutional claims, they would fail upon their merits. The petitioner's final claim regarding whether the court of appeals should have struck appellate counsel's no merit brief raises only a question of state law and thus is not cognizable in a petition for habeas corpus in federal court. Accordingly, for all the reasons set forth herein, the petitioner's petition for a writ of habeas corpus will be denied.

Finally, in accordance with Rule 11 of the Rules Governing Section 2254 Cases, the court concludes that the petitioner has failed to make a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). Therefore, the court will deny the petitioner a certificate of appealability.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the petitioner's petition for a writ of habeas corpus is **denied**.

**IT IS ALSO ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 11th day of March, 2012.

BY THE COURT:

s/Patricia J. Gorence
PATRICIA J. GORENCE
U.S. Magistrate Judge